UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

GENA UCUS

    Plaintiff,                                           CASE NO.:

v.

NCL (BAHAMAS) LTD.,
a Bermuda Company d/b/a NCL,
a Foreign Profit Corporation

    Defendant.
_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, GENA UCUS, by and through his undersigned counsel, hereby files this action against Defendant, NCL (BAHAMAS) LTD., a Bermuda Company d/b/a NCL, a Foreign Profit Corporation, for damages and alleges as follows:

### THE PARTIES AND JURISDICTION

1. This is an action seeking damages in excess of $75,000.00, exclusive of interest, cost and attorney's fees.

**A.**    **THE PLAINTIFF**

2. Plaintiff, GENA UCUS, was and is a resident of the State of New York.

**B.**    **THE DEFENDANT**

3. At all times material, Defendant, NCL (BAHAMAS) LTD., is a corporation of the Country of Bermuda.

4. At all times material hereto, Defendant, NCL (BAHAMAS) LTD., was doing business in Miami-Dade County, Florida.

5. The Defendant, NCL (BAHAMAS) LTD., as a common carrier, is/was engaged in providing to the public, including the Plaintiff, cruises aboard the vessel, NORWEGIAN BREAKAWAY.

6. At all times material, Defendant, NCL (BAHAMAS) LTD., was doing business as "NCL."  Defendant will hereinafter be referred to as NCL in this Complaint.

C. **SUBJECT MATTER JURISDICTION**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, as this civil action is one where the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between a citizen of a state and a citizen or entity of a foreign state.

8. This Court also has jurisdiction as will be set forth in more detail below by virtue of admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and *Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 210 (1963); *Tullis v. Fid. & Cas. Co. of NY.*, 397 F.2d 22 (5th Cir. 1968); *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F.Supp 3d 1311 as the incident giving rise to this action, set forth in more detail below, occurred on the gangway during the disembarkation process.

D. **VENUE & PERSONAL JURISDICTION**

9. Venue is proper under 28 U.S. §1391 as Defendant, NCL, personally or through its agents:

    a) Operated, conducted, engaged in or carried on a business venture in the State of Florida and/or Miami-Dade County, or had an office or agency in said State and/or County; and/or

    b) Was engaged in substantial activity within the State; and/or

    c) Operated vessels in the waters of the State of Florida; and/or

    d) Sold tickets for voyages on the vessel and other vessels of Defendant out of active offices in Miami-Dade County, Florida.

10. Venue is also proper before this Honorable Court due to the forum selection clause contained within Defendant's cruise ticket which requires that any action be brought before the United States District Court for the Southern District of Florida in Miami, Florida, U.S.A.

11. That at all times material hereto, Defendant, NCL, owned, operated, managed, and/or controlled the aforementioned vessel, NORWEGIAN BREAKAWAY, which was part of Defendant's cruise fleet and was based out of the Port of New York in New York, New York.

12. All conditions precedent for filing and maintaining this action have been fulfilled, waived, or do not apply.

E.   **FACTUAL ALLEGATIONS**

13.   On or about February 1, 2015, Plaintiff, GENA UCUS, and his wife, Alexandra Ucus, departed the Manhattan Cruise Terminal located at 711 12th Avenue, New York, NY on a twelve (12) day Caribbean cruise as passengers on the NORWEGIAN BREAKAWAY - Voyage No. 56150201.

14.   On or about February 12, 2015, the evening before Plaintiff, GENA UCUS, was scheduled to return to New York, Plaintiff and his wife were at Bliss Ultra Lounge on located on Deck Number 7 of the NORWEGIAN BREAKAWAY when Plaintiff, GENA UCUS, slipped and fell on the floor.

15.   Plaintiff's fall was caused by a dangerous condition believed to be water or some other liquid transitory substance.

16.   Plaintiff did not observe the transitory substance on the floor prior to his fall and could not take appropriate steps to avoid the liquid substance given not only the color of the floor in the lounge but also the poor lighting conditions in the lounge.

17.   Following his slip and fall in Bliss Ultra Lounge, Plaintiff, GENA UCUS, presented to the Medical Center on Deck Number 5 where Plaintiff, GENA UCUS, was treated by the ship's doctor, Eric C. Agor.

18.   At that time, Plaintiff, GENA UCUS, reported pain in his right foot and, as such, Dr. Eric C. Agor, the ship's doctor, ordered Plaintiff, GENA UCUS, to submit to x-rays of this right foot.

19. Upon review of the x-rays of GENA UCUS' right foot, Dr. Eric C. Agor reported in the NCL Injury Illness and Medical Record that **there were no fractures or dislocations to Plaintiff's right foot** and diagnosed Plaintiff, GENA UCUS, with "musculoskeletal strain."[1]

20. Plaintiff, GENA UCUS, returned to his stateroom, number 14244, after leaving the Medical Center.

21. The following morning, February 13, 2015, Plaintiff, GENA UCUS, and his wife, Alexandra Ucus, were scheduled to disembark the NORWEGIAN BREAKAWAY in New York, NY.

22. Prior to commencing the disembarkation process, an agent, employee or NCL crew member, possibly from guest services, arrived at Plaintiff's stateroom with a black wheelchair. The black wheelchair bore an image of the NCL corporate logo on the back of the chair.

23. Although the name of the NCL employee who arrived at Plaintiff's stateroom is unknown, he was dressed in a dark colored uniform identical to those worn by the NCL crew and staff during the 12 day cruise on the Breakaway, bearing the NCL logo on the front of the uniform and name tag.

---

[1] Plaintiff reserves the right to amend his pleadings to bring a separate claim for negligence for the slip and fall in Bliss Ultra Lounge for Defendant's breach of its duty to exercise reasonable care for the safety of its passengers, should it later be discovered that the x-ray taken on the ship and read by Dr. Eric C. Agor reveal results other than those reflected in the Injury Illness and Medical Records previously provided by Defendant, NCL. To date, Plaintiff and his counsel have not been provided with radiographic studies from that examination for review.

24. The NCL employee and/or crew member proceeded to push the wheelchair into Plaintiff's stateroom and assisted Plaintiff in getting in to the wheelchair from his bed.

25. The NCL employee and/or crew member did not secure or buckle Plaintiff into the NCL wheelchair prior to exiting the stateroom to disembark the ship.

26. The NCL employee and/or crew member then transported Plaintiff from Deck 14 where Plaintiff's stateroom was located to the Deck where passengers were disembarking the ship to retrieve their luggage at the Manhattan Terminal in New York, NY.

27. Sometime after arriving on the Deck where the passengers disembark, Plaintiff, GENA UCUS, presented ship security with his Freestyle Card to be scanned for the purpose of documenting that he was departing from the ship.

28. Around the same time, the NCL employee and/or crew member transporting Plaintiff in the NCL wheelchair, presented his NCL identification card to ship security to be scanned to document that he, the unnamed employee, was leaving the ship.

29. After both the NCL employee and/or crew member and Plaintiff's their cruise identification cards were scanned by ship security, the NCL employee and/or crew member proceeded to push Plaintiff in the wheelchair provided by Defendant, NCL, to the gangway to disembark the ship.

30.  At the time, Plaintiff remained unsecured and was not seat-belted in to the wheelchair.

31.  The gangway from the ship to the Manhattan terminal where passengers retrieve their luggage is sloped on a downward angle.

32.  As the NCL employee and/or crew member was pushing Plaintiff, GENA UCUS, down the sloped gangway with the front of the wheelchair first, he was doing so at an unreasonable pace and/or speed.

33.  The unreasonable pace and/or speed in which the NCL employee and/or crew member was pushing Plaintiff was observed by another cruise passenger disembarking behind Plaintiff, and this cruise passenger repeatedly told the NCL employee and/or crew member to slow down in pushing the wheelchair out of concern for Plaintiff's safety.

34.  The NCL employee and/or crew member ignored the warnings given by the other cruise passenger and shortly thereafter the NCL employee and/or crew member lost control of the wheelchair and/or hit an obstruction on the gangway with the wheelchair.

35.  As a result of the NCL employee and/or cruise member losing control of the NCL wheelchair and/or hitting an obstruction on the gangway, the NCL wheelchair tipped forward and/or to the side thereby dumping Plaintiff, GENA UCUS, out of the chair and on to the gangway.  The NCL wheelchair then landed on top of Plaintiff.  Plaintiff immediately felt severe excruciating pain, indicating

that he has sustained a new injury to his right foot, more than a "musculoskeletal strain" as previously diagnosed by Dr. Agor.

36. Following the incident, Plaintiff, GENA UCUS, was helped back in to the NCL wheelchair by other passengers on the gangway disembarking the NORWEGIAN BREAKAWAY at the Manhattan Terminal in New York, NY, and Plaintiff and his wife, Alexandra Ucus, proceeded to the terminal to retrieve their luggage.

37. The NCL employee or crew member responsible for pushing Plaintiff did so without further incident to the terminal after Plaintiff was placed back into the chair on the gangway.

38. After returning to his home in Brooklyn, NY, on February 13, 2015, Plaintiff noticed that his right foot was considerably swollen and discolored and, as such, had an ambulance transport him to Lutheran Hospital in Brooklyn, NY.

39. Following his arrival at Lutheran Hospital in Brooklyn, NY, Plaintiff, GENA UCUS, presented for x-rays of his right foot which revealed Lisfranc fractures involving the medial, intermediate and lateral cuneiforms, and the bases of the first, second and third metatarsals, as well as non-displaced fractures through the base of the proximal phalanx of the great toe and the necks of the second, third and fourth toe proximal phalanges.

40. Plaintiff, GENA UCUS, subsequently had surgery on his right foot to repair the injuries he sustained as a result of being dumped out of the NCL wheelchair by the NCL employee and/or crewmember transporting Plaintiff on

the gangway disembarking the NORWEGIAN BREAKAWAY in New York, NY on February 13, 2015.

## COUNT I – NEGLIGENCE AGAINST NCL

Plaintiff, GENA UCUS, re-alleges and re-affirms the allegations contained in Paragraphs 1 through 40 above as if fully set forth herein and further alleges as follows:

41. At all times material hereto, Defendant, NCL, owned, operated, managed, and/or controlled the aforementioned vessel, NORWEGIAN BREAKAWAY.

42. As the owner, operator, manager and controller of the NORWEGIAN BREAKAWAY, Defendant, NCL, owed Plaintiff, an invitee lawfully on the ship, a duty to exercise reasonable care.

43. As a common carrier, Defendant, NCL, also owed a continuing obligation and/or duty to care for its passengers which also included a duty to provide and/or maintain a reasonably safe means for a passenger, such as Plaintiff, GENA UCUS, to disembark the NORWEGIAN BREAKAWAY.

44. Defendant, NCL, also has the unconditional responsibility and/or duty to protect its passengers including Plaintiff, GENA UCUS, for misconduct of the crew toward the passengers.

45. Defendant, NCL, its employees, agents, staff, crewmembers, owners, and operators breached the aforementioned duties owed to Plaintiff and were negligent in the following ways:

a) Failing to have proper procedures and/or protocols in place for transporting passengers such as Plaintiff in wheelchairs down the sloped gangway; and/or

b) Failing to provide Plaintiff with a proper wheelchair during the disembarkation process, i.e. a proper wheelchair, that contained the appropriate safety devices such as straps and/or belts to secure Plaintiff into the wheelchair for transportation down the gangway during the disembarkation process; and/or

c) Failing to provide the proper training to its employees, staff and crewmembers in the use and operation of Defendant's wheelchairs including training in transporting passengers such as Plaintiff down a sloped gangway; and/or

d) Failing to properly conduct background and prior employment checks for its employees, staff and crewmembers to ensure they are competent and physically able to transport passengers and more, importantly, transport Plaintiff down the gangway in a wheelchair; and/or

e) Failing to inspect for and/or observe obstructions or other conditions in the gangway that would or could cause a wheelchair to tip over and eject a passenger like Plaintiff while being transported down the gangway; and/or

    f) Failing to implement a method of operation that was reasonable and safe that would prevent accidents alleged herein and allowing negligent methods of operation; and/or

    g) Failing to maintain the gangway in a reasonably safe condition; and/or

    h) Failing to have adequate signs and/or warnings on the gangway that would alert both Plaintiff and the staff, crewmembers and employees of NCL of the potential dangers involved in pushing a wheelchair down the gangway front first while said chair is occupied by a passenger like Plaintiff; and/or

    i) Ignoring warnings by other passengers disembarking the NORWEGIAN BREAKAWAY on February 13, 2015 to slow down while pushing Plaintiff down the sloped gangway out of concerns an incident like the one described herein might occur; and/or

    j) Engaging in conduct and/or misconduct on the part of the employees, staff and crewmembers that resulted in an accident and/or injury to Plaintiff.

46. As a direct and proximate result of the negligent conduct of Defendant, NCL, as well as the negligent conduct of its agents, employees, staff or crewmembers for which Defendant, NCL, is responsible, Plaintiff has suffered bodily injury, in part described above, resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense

of hospitalization, medical, nursing care and physical therapy treatment, loss of earnings and loss of the ability to earn wages in the future.  The aforementioned losses are permanent and ongoing.  Plaintiff, GENA UCUS, has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, Plaintiff, GENA UCUS, demands judgment against Defendant, NCL (BAHAMAS) LTD., a Bermuda Company d/b/a NCL, a Foreign Profit Corporation, for damages suffered as a result of Plaintiff's injury and pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical, nursing care and physical therapy treatment, loss of earnings and loss of the ability to earn wages in the future; all court costs, all interest, and any other damages which the Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff further demands a trial by jury on all issues so triable.

DATED this 18th day of January, 2016

>
> Respectfully submitted,
> ELTRINGHAM LAW GROUP
> Attorneys for Plaintiff
> 233 South Federal Highway, Suite 105
> Boca Raton, Florida 33432
> Telephone: 561/338-0420
> Pleadings Email: pleadings@eltlaw.com
> tj@eltlaw.com & cn@eltlaw.com
>
> By:   /s/ Thomas J. Jerla, Jr., Esq.
>        THOMAS J. JERLA, JR., ESQ.
>        Florida Bar No. 570958